IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALCOLM LEE ARMES,

    *Plaintiff*,

    v.

TALBOT COUNTY, MARYLAND,

    *Defendant*.

Civil Action No. ELH-11-3315

**MEMORANDUM OPINION**

    Malcolm Armes, plaintiff, filed suit against Talbot County, Maryland (the "County"), defendant, for gender discrimination and breach of contract as a result of the County's failure to hire Armes for a newly created County position, which, he contends, replaced a similar position that Armes had held for eight years.  *See* Complaint ¶ 10, 16, 22 (ECF 1).[1]  Armes alleges that the County violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by hiring a less experienced female for the position.  *See* Complaint ¶ 16.  Relying on the Talbot County Employee Handbook ("Handbook"), Armes also claims that the County is liable for breach of contract, because it failed to give Armes priority consideration as a laid-off employee. *See id.* ¶ 21.

    The County has moved for summary judgment as to both gender discrimination (Count One) and breach of contract (Count Two).  ("Motion," ECF 16-1).  Armes opposes the Motion ("Opposition" or "Opp.," ECF 17), and the County has replied ("Reply," ECF 18).  The issues have been fully briefed, and no hearing is necessary to resolve them.[2]  *See* Local Rule 105.6.  For

---

[1] Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal gender discrimination claim.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the breach of contract claim, which arises pursuant to Maryland law.

[2] This is the County's second summary judgment motion.  After suit was filed, the

the reasons that follow, this Court will grant the Motion.

## Background

In April 2001, the County hired Armes as a full-time Food Service Manager for Hog Neck Golf Course, which the County owns and operates.  *See* Complaint ¶ 5; Answer ¶ 5 (ECF 8).  On April 13, 2001, Armes signed an Employee Acknowledgement Form, in which he promised to read and comply with the Handbook.  *See* Employee Acknowledgement Form (ECF 16-8).   Page 2 of the Handbook states: "**THE HANDBOOK IS FOR REFERENCE PURPOSES ONLY.   IT IS NOT AN EMPLOYMENT CONTRACT AND IS NOT INTENDED TO CREATE CONTRACTUAL OBLIGATIONS OF ANY KIND.**" Handbook at 2 (ECF 17-5 at 2) (bold text and capital letters in original).   Page 65 of the Handbook states: "Employees who are laid off will be given priority consideration when County vacancies for which they are qualified are being filled."  *Id.* at 65 (ECF 17-5 at 4).

According to Armes, his "job performance was exemplary," and he "consistently received positive performance evaluations."  Complaint ¶ 5; Answer ¶ 5.  Unfortunately, due to budgetary cutbacks, the County eliminated the position of full-time Food Service Manager in late November 2009.  *See* Deposition of Michael Kaminskas at 13-14 ("Kaminskas Dep.," ECF 16-10); Affidavit of James Urbanczyk ¶ 2 ("Urbanczyk Aff.," ECF 16-3).[3]   In place of the eliminated position, the County created a position for a part-time Food Service Manager, who would not work during the winter.  *See* Urbanczyk Aff. ¶ 4.

---

County moved to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 56.  *See* Motion to Dismiss (ECF 4).  I denied that motion, without prejudice to the County's right to reassert its arguments after the conclusion of discovery.  *See* Memorandum to Counsel (ECF 7).

   [3] At the time of the events at issue, James Urbanczyk was the Assistant County Manager.  *See* Urbanczyk Aff. ¶ 1.  Michael Kaminskas was the facility manager for Hog Neck Golf Course and was Mr. Armes's immediate supervisor.  *See* Motion Ex. 6 ("Letter," ECF 16-6).

On November 2, 2009, Armes mailed a letter to James Urbanczyk, the Assistant County Manager, captioned: "Diverting [C]ounty funds."  *See* Motion Ex. 6 ("Letter," ECF 16-6).[4] Armes stated that, as to his previous supervisor, Armes "had no problems with his management style or the accountability guidelines that he asked me to set up.  All monies received . . . were deposited and accounted for through the caf[é]."  *Id.*  According to Armes, "[t]his all changed when [Armes's previous supervisor] was replaced by" Michael Kaminskas, who was then the new facility manager for Hog Neck Golf Course.  *Id.*  Armes claimed that he (Armes) "immediately had problems receiving caf[é-]generated monies that . . . Kaminskas collected . . . ."  *Id.*  Although Armes "kept track of all purchases, income, and deposits," he alleged that "the records for the 2008 [golf] tournament sales mysteriously disappeared . . . ."  *Id.*

Upon learning of Armes's accusations, Kaminskas denied misappropriating any monies.  *See* Urbanczyk Aff. ¶ 7.  "[A]n internal audit by the Finance Department[, although] revealing significantly declining revenues for the café, failed to conclusively convince [Urbanczyk] that ... Kaminskas had engaged in wrongdoing."  *Id.* (footnote omitted).[5]

On January 1, 2010, Armes "retired from County service . . . ."  *See* Urbanczyk Aff. ¶ 2.[6] Less than two months later, on February 15, 2010, he wrote a letter to Urbanczyk, stating that he missed his work and wanted to apply for the newly created position of part-time Food Service Manager.  *See* Opp. Ex. C at 1 (ECF 17-4).  On February 16, 2010, Armes wrote a letter to the same effect to Kaminskas.  *See id.* at 2.  In addition, he telephoned Kaminskas to ask about the

---

[4] According to the County, Armes mailed the Letter "upon learning of what was to become of his position." Motion at 5.  But, the record does not reveal the date on which Armes learned of the elimination of his position as full-time Food Service Manager.

[5] At his deposition, Kaminskas testified that he did not know whether anyone other than Armes and the auditors knew of Armes's accusations.  *See* Kaminskas Dep. at 21.  Thus, the record does not reveal whether Armes's accusations affected the morale of other employees at Hog Neck Golf Course.

[6] The record is unclear as to whether Armes's "retirement" was considered a "layoff."

position.  *See* Kaminskas Dep. at 22.  At his deposition, Kaminskas testified:  "I told [Armes] on the phone that . . . based upon his accusations of me with theft, that it would not be a good working relationship, and based upon that, I could not hire him."  *Id.*  When asked why he could not work with plaintiff, Kaminskas responded:  "Because that's pretty serious, it defames my character. . . .  I don't think that I would be able to work with somebody that accused me of something like that."  *Id.* at 23.  Instead, Kaminskas recommended hiring Amy Meyers, a female who, he admits, was less qualified for the position than Armes.  *Id.* at 35.

This suit followed on November 18, 2011.  Armes asserts gender discrimination, on the ground that the County hired a less experienced female as part-time Food Service Manager.  *See* Complaint ¶ 16.  He also claims breach of contract, because the County failed to give Armes "priority consideration," in accordance with the Handbook.  *See id.* ¶ 22.

## Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *News and Observer Publishing Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The district court's "function" in resolving a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248.

## I. Gender Discrimination (Count One)

The County contends that its employment decision was based on a legitimate, non-discriminatory reason: the County chose not to hire Armes for the position of part-time Food Service Manager because of Armes's prior allegations of theft, lodged against Kaminskas, who would have supervised Armes. *See* Motion at 8.

In his Opposition, Armes maintains that his statements about Kaminskas do not constitute a legitimate, non-discriminatory reason for the County's failure to hire Armes because: (1) "it seems unlikely an employer would penalize an employee for voicing a concern that another staff member was stealing"; (2) "Kaminskas was not informed of the results of the investigation or disciplined in connection with Armes' complaint"; and (3) the County's opinion that Armes and Kaminskas would be unable to work together is a "weak assertion[] . . . ." *Id.* at 6-7. Furthermore, Armes contends that he established a *prima facie* case of gender discrimination, Opp. at 3, pointing out that Kaminskas admitted that Armes was more qualified for the position than Meyers. *See id.* at 4-5.

A plaintiff who lacks direct evidence of discrimination[7] may proceed under the burden-shifting approach popularly known as the *McDonnell Douglas* proof scheme.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  An employee who proceeds under the *McDonnell Douglas* approach must first establish a "*prima facie* case of discrimination."  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  To establish a *prima facie* case of gender discrimination, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) subjection to an adverse employment action; and (4) demonstration that similarly situated employees outside the protected class received more favorable treatment."  *Westmoreland v. Prince George's Cnty.*, No. 09-CV-2453 AW, 2011 U.S. Dist. LEXIS 97872, at *13, 2011 WL 3880422, at *4 (D. Md. Aug. 31, 2011) (citing *Prince-Garrison v. Md. Dep't of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008)).

If the plaintiff establishes a *prima facie* case of discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for the conduct of which the plaintiff complains.  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).  When the defendant meets its burden, the plaintiff must then prove "that the proffered reason was not the true reason," and that the plaintiff "has been the victim of intentional discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Put differently, if the defendant proffers a legitimate, non-discriminatory basis for its actions, the plaintiff is essentially in the same position in which he or she would be if the plaintiff were proceeding under ordinary principles of proof: the plaintiff

---

[7] Here, Armes does not offer any direct evidence of gender discrimination, such as an alleged statement by the County that it hired Meyers because she is female.

must adduce direct or circumstantial evidence that could persuade a fact finder that he or she was the victim of invidious discrimination.

Armes has established a *prima facie* case of gender discrimination.  First, as a male, Armes is a member of a protected class.  *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 749-50 (4th Cir.) ("While Congress' particular focus in amending Title VII to prohibit discrimination on the basis of 'sex' was to ensure equal employment rights for women, the Supreme Court has interpreted the Act's broad language to protect both men and women.") (citing *Newport News Shipbuilding and Dry Dock Co. v. Equal Emp't Opportunity Comm'n*, 462 U.S. 669, 676 (1983)), *cert. denied*, 519 U.S. 818 (1996).  Second, Armes's job performance was satisfactory.  *See* Complaint ¶ 5; Answer ¶ 5.  Third, Armes was subject to an adverse employment action, in that he was not re-hired by his employer for the position of part-time Food Service Manager.  *See* Kaminskas Dep. at 22.  Finally, Meyers, a less qualified applicant, received more favorable treatment, as she was hired, rather than plaintiff.  *See id.*

Nevertheless, the County has offered a legitimate, non-discriminatory reason for failing to hire Armes for the position of part-time Food Service Manager.  As noted, it is undisputed that Armes mailed the Letter to Urbanczyk, the Assistant County Manager.  Captioned "Diverting [C]ounty funds," the Letter essentially accused Kaminskas, who was Armes's supervisor and the facility manager for Hog Neck Golf Course, of misappropriating "caf[é-]generated monies."  *Id.* Although the accusations were not substantiated and Kaminskas was not disciplined, it is patently obvious that, given Armes's assertions, Kaminskas and Armes would experience a strained working relationship, at best.  Indeed, Kaminskas acknowledged during his deposition that Armes's "accusations [of] theft" would impede "a good working relationship" between Armes and Kaminskas.  Kaminskas Dep. at 22.  Moreover, Armes has failed to present any

evidence "that the proffered reason was not the true reason" for the employment decision, and that Armes was "the victim of intentional discrimination" based on gender. *See Burdine*, 450 U.S. at 256.

Armes insists that his statements about Kaminskas do not constitute a legitimate, non-discriminatory reason for the County's failure to hire him. In Armes's view, "it seems unlikely an employer would penalize an employee for voicing a concern that another staff member was stealing." Opp. at 6. According to Armes, the County's proffered reason for failing to hire him "raises suspicion as it is contrary to good employment practice" and would "deter future employees from reporting fiscal improprieties." *Id.* Plaintiff opines that the County's "weak assertions" are insufficient to rebut his *prima facie* case. *Id.* at 7. However, I agree with the County that plaintiff's suspicion of its asserted basis is insufficient, standing alone, to rebut the County's proffered explanation.

Once an employer has proffered a non-discriminatory reason for its employment decision, the burden of production shifts back to the plaintiff to establish that the proffered reason is a pretext. At this juncture, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). The plaintiff may do so by presenting evidence that directly contradicts the employer's proffered justification, "or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). But, the plaintiff may not rely solely "on his 'own assertions of discrimination'" to persuade a trier of fact. *Adam v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citation omitted). When a plaintiff fails "to

present any other evidence—beyond baseless speculation—that [the employer's] stated reason was pretextual, that trier of fact 'would be hard-pressed to conclude that [plaintiff] established pretext.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007).  Armes has not identified any evidence from which a fact finder could conclude that the County's proffered reason for failing to hire Armes for the position of part-time Food Service Manager was not the true reason.  Rather, he has offered only speculation and suspicion.

To be sure, the Supreme Court has said that a "factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  Thus, "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, '[n]o additional proof of discrimination is *required* . . . .'" *Id.* (emphasis in *St. Mary's Honor Center*) (citation omitted).  But here, plaintiff has offered no basis to disbelieve the County's proffered justification for its employment decision, other than his claim that to decline to hire him because of his past allegation of misconduct would be a poor employment practice by the County.  Of course, discrimination against plaintiff on the basis of his gender would also be a poor employment practice, and an unlawful one.  Plaintiff has offered no ground other than speculation upon which a jury could conclude that the County applied the latter poor employment practice, which is prohibited by Title VII, rather than the former.  In the employment discrimination context, as in other areas of the law, "evidence is legally insufficient if [a] verdict for [the] party offering that evidence would be necessarily based on speculation and conjecture." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000).

Armes seemingly acted in good faith when he wrote the Letter accusing Kaminskas of misappropriating funds.  *See* Letter.  Understandably, however, Kaminskas might have regarded Armes's statements as a personal attack, rather than a good faith voicing of concerns.  *See* Kaminskas Dep. at 22.  And, in declining to hire plaintiff, the employer might have wanted to avoid the challenges of a poisoned working environment.  In any event, regardless of Kaminskas's reaction to Armes's accusations, Armes has not submitted any evidence suggesting that gender had anything to do with the County's decision not to hire him.  Because Armes has failed to adduce evidence that could disprove the County's legitimate, non-discriminatory reason for failing to hire Armes for the position of part-time Food Service Manager, the County is entitled to judgment as a matter of law as to the claim for gender discrimination (Count One).

## II. Breach of Contract (Count Two)

The County contends that the Handbook did not constitute a contract because the Handbook stated that it was subject to change, and it also contained a disclaimer that it did not create contractual obligations.  *See* Motion at 11.  Alternatively, the County argues that the statute of limitations bars Armes's claim because the alleged breach of contract occurred in February 2010, when the County declined to hire Armes for the position of part-time Food Service Manager, and Armes sued over a year later, on November 18, 2011.  *See* Motion at 8-9.

In his Opposition, Armes maintains that the Handbook's disclaimer is not "clear and unequivocal," and the Handbook lacked a specific disclaimer regarding the statement that laid-off County employees would receive "priority consideration."  Opp. at 11-12.  In his view, there is a genuine dispute of material fact as to whether he reasonably relied on the Handbook.  *See id.* at 10-11.  Further, Armes argues that the statute of limitations does not bar his claim because the

Handbook does not set an end date for giving priority consideration to laid-off employees; therefore, "completion of the contract" has not yet occurred. *Id.* at 8.[8]

Under Maryland law,[9] "an employee handbook may, in some circumstances, become an unilateral contract." *Elliott v. Bd. of Trustees of Montgomery Cnty. Cmty. College*, 104 Md. App. 93, 100, 655 A.2d 46, 49 (citing *Staggs v. Blue Cross of Md., Inc.*, 61 Md. App. 381, 486 A.2d 798, *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985)), *cert. denied*, 339 Md. 354, 663 A.2d 72 (1995). But, the cases are legion in Maryland that an employee handbook does not constitute a contract where it contains a clear, conspicuous, and unequivocal disclaimer stating that it is not a contract.

For example, in *Bagwell v. Peninsula Regional Med. Ctr.*, 106 Md. App. 470, 491, 494, 665 A.2d 297, 307, 309 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996), the Maryland Court of Special Appeals affirmed the grant of an employer's motion for summary judgment on a claim for breach of contract based on an employee handbook, which contained the following disclaimer: "[T]he Handbook does not, and is not intended to . . . serve as a contract between you

_____

[8] The parties advance additional arguments regarding Armes's status as an "at will" employee. I need not address them, because this case turns on the County's failure to hire Armes for the newly created position of part-time Food Service Manager, not the elimination of the position of full-time Food Service Manager. *See* Complaint ¶¶ 16, 17, 22.

[9] It is clear that Maryland law governs plaintiff's breach of contract claim. "'When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state.'" *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215 (1985). Thus, I must consult the choice of law rules of Maryland, the state in which this Court sits, to determine which state's substantive law applies.

Maryland applies the doctrine of *lex loci contractus*, pursuant to which "the law of the jurisdiction where the [alleged] contract was made controls its validity and construction." *U.S. Life Ins. Co. v. Wilson*, 198 Md. App. 452, 463, 18 A.3d 110, 116 (2011); *see also Allstate Ins. Co. v. Hart*, 327 Md. 526, 529, 611 A.2d 100, 101 (1992) ("Maryland courts ordinarily should apply the law of the jurisdiction where the [alleged] contract was made."). Here, the alleged contract, the Handbook, was made in Maryland. Thus, Maryland law controls.

and" the employer.  The Court reasoned that, because the disclaimer "expressly stated that the Handbook should not be treated as a contract in any way," the plaintiff could not "reasonably assert justifiable reliance on any of the terms of the Handbook." *Id.* at 494, 665 A.2d at 309.

Similarly, in *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md. App. 772, 776, 794-95, 614 A.2d 1021, 1023, 1032 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993), the Court of Special Appeals affirmed the dismissal of a claim for breach of contract based on an employee manual that contained the following "clear and conspicuous" disclaimer: "This manual does not constitute an express or implied employment contract and nothing in the manual is intended to bind [the employer] contractually."

Likewise, in *Castiglione v. Johns Hopkins Hosp.*, 69 Md. App. 325, 329, 339-40, 517 A.2d 786, 788, 793 (1986), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987), the Court of Special Appeals affirmed the award of summary judgment to an employer on a breach of contract claim that was based on an employee handbook.  The handbook contained the following disclaimer: "[T]his handbook does not constitute an express or implied contract."  The Court concluded that the employer, through the disclaimer, had "expressly negated, in a clear and conspicuous manner, any contract based upon the handbook . . . ."  *Id.* at 340, 517 A.2d at 793. *See also Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) (applying Maryland law and stating that "[a]n employer may include a clear disclaimer . . . to avoid contractual liability for a personnel policy") (citation omitted); *Elliott*, 104 Md. App. at 101-02, 486 A.2d at 50.

I find unpersuasive Armes's reliance on *Haselrig v. Public Storage, Inc.*, 86 Md. App. 116, 118-19, 132, 585 A.2d 294, 295-96, 302 (1991), in which the Maryland Court of Special Appeals reversed the dismissal of a breach of contract claim based on an employee handbook. The Court distinguished *Castiglione*, 69 Md. App. at 329, 517 A.2d at 788, because the

employee handbook in *Haselrig* lacked a disclaimer stating that the employee handbook "was [not] intended to be construed as an express or implied contract." *Haselrig*, 86 Md. App. at 129, 585 A.2d at 301.  In contrast, the Handbook here includes such a disclaimer.  As indicated, the Handbook contains the following prominent disclaimer: "**THE HANDBOOK IS FOR REFERENCE PURPOSES ONLY.  IT IS NOT AN EMPLOYMENT CONTRACT AND IS NOT INTENDED TO CREATE CONTRACTUAL OBLIGATIONS OF ANY KIND.**" Handbook at 2 (bold text and capital letters in original).  In addition, Armes signed an Employee Acknowledgement Form, in which Armes promised to read the Handbook.  *See* Employee Acknowledgement Form.  Therefore, *Castiglione*, not *Haselrig*, controls.

Because Armes does not dispute the existence or authenticity of the Handbook's clear, conspicuous, and unequivocal disclaimer, the Handbook did not constitute a contract. Accordingly, the County is entitled to judgment as a matter of law as to breach of contract (Count Two).

Alternatively, even if the Handbook constitutes a contract, I am satisfied that the statute of limitations bars Armes's contract claim.  Md. Code Ann. (1957, 2011 Repl. Vol., 2012 Supp.), Article 25A, § 1A, abrogates the defense of sovereign immunity for Maryland charter counties as to "an action in contract based upon a written contract executed on behalf of the county, or its department, agency, board, commission, or unit by an official or employee acting within the scope of his authority." *Id.*, § 1A(a).  But, it imposes the following condition: "A claim is barred unless the claimant files suit within one year from the date on which the claim arose or within one year after completion of the contract giving rise to the claim, whichever is later." *Id.*,

§ 1A(C).[10]  Talbot County is a charter county.  *See, e.g.*, *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 385, 2 A.3d 344, 351 (2010).  As such, the County is subject to Article 25A.

"The limitations provision embodied in § 1A(c) was enacted as part of the Act that precluded municipal corporations from interposing the defense of sovereign immunity in contract actions."  *Abrams v. Rockville*, 88 Md. App. 588, 596, 596 A.2d 116, 119 (1991) (citing 1976 Md. Laws, ch. 450).  "That Act applied not only to municipal corporations but to the State and its counties as well."  *Id.*

The record does not reveal the date on which the County hired Meyers for the newly created position of part-time Food Service Manager.  In his Opposition, Armes does not dispute the County's contention that the alleged breach of contract occurred in February 2010.  Nevertheless, Armes contends that his contract claim is not barred by limitations because "completion of the contract" has not yet occurred.  Opp. at 8-9.  According to Armes, the County is indefinitely obligated to give Armes "priority consideration" for job vacancies for which he is qualified—in other words, the County owes Armes a contractual obligation throughout his entire life.  *See id.*

I cannot agree with Armes's application of the statute of limitations to the Handbook, especially given that the Maryland General Assembly intended for the one-year time period in Section 1A(c) to limit governmental liabilities.  *Cf. Abrams*, 88 Md. App. at 596-97, 596 A.2d at 119-20 (explaining that the Maryland General Assembly enacted Section 1A(c) "to address the Governor's reservations" "over the uncertain fiscal impact of" abrogating governmental entities' defense of sovereign immunity).  Armes did not sue the County until November 2011, which was more than one year after the alleged breach.  Thus, the suit was filed outside the limitations

---

[10] Although the County cites Section 1A(c) of Article 23A of the Maryland Code, that article applies only to municipal corporations.  Section 1A(c) of Article 25A applies to charter counties.

period.  Because Armes sued the County more than one year after February 2010 (the month in which the County allegedly breached a contract by hiring Meyers), the statute of limitations bars Armes's claim for breach of contract, and the County would be entitled to judgment as a matter of law as to the claim for breach of contract (Count Two).

## Conclusion

For the foregoing reasons, this Court will grant the Motion.  A separate Order, consistent with this Opinion, follows.


Date: November 19, 2012                          _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge